Andrew Kosiba
Plaintiff *in Propria Persona*
33 Neal Path
South Setauket, NY 11720
ak764@protonmail.com

F I L E D
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★   DEC - 8 2021   ★

LONG ISLAND OFFICE

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK
### 225 Cadman Plaza East, Brooklyn, NY 11201

ANDREW KOSIBA

    PLAINTIFF

v.

CATHOLIC HEALTH SYSTEMS OF
LONG ISLAND, INC.

    DEFENDANT

_____/

**CV-21 6416**

CASE NO. _____

**BROWN, J.**

**LINDSAY, M.J.**

## COUNT I – COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
## UNDER THE AMERICANS WITH DISABILITIES ACT

Plaintiff, Andrew Kosiba, sues the defendant, CATHOLIC HEALTH
SYSTEMS OF LONG ISLAND, INC., for discrimination on the basis of disability,
and for prohibited actions taken on the basis of this disability under the "regarded
as" prong; and for declaratory and injunctive relief under Title I of the Americans
with Disabilities Act as implemented under 29 CFR Part 1630, *et sequitur*, and
alleges the following:

### JURISDICTION AND VENUE

1.     This court has original and exclusive jurisdiction under Title I of the Americans with Disabilities Act of 1990 and the Americans with Disabilities Act Amendments Act of 2008; 42 U.S.C. §12101 and 42 U.S.C. §12112(a), (b) and (d)(4) as it pertains to "Discrimination"; as implemented by 29 CFR Part 1630.14(b)(3), (c) & (d) as it pertains to adverse employment actions, employers and medical examinations and interventions.

2.     Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. §1391(b)(2) because Plaintiff resides in this District and a substantial part of the events or omissions giving rise to the claims occurred in this District.

3.     The incidents and facts giving rise to this complaint have occurred within the last one hundred eighty days.  The plaintiff has commenced a complaint against the defendant with the Equal Opportunity Employment Commission (EEOC) on or about the date of October 7, 2021.  The case is pending and the EEOC does not currently have the ability to schedule any time for a meeting, but is conducting an investigation with plaintiff's employer.

## PARTIES

4.     Plaintiff, Andrew Kosiba, resides in Suffolk County, New York at the address of 33 Neal Path; South Setauket and is a qualified individual with a disability within the meaning of the ADA.  The plaintiff is an employee of the defendant, which is a "covered entity" within the meaning of the Act.

5.     The defendant's principal place of business is located at 110 Bi-County Blvd; Farmingdale, New York  11735.

## PLAIN STATEMENT

**6.** The defendant regards the plaintiff as having a disability and the plaintiff has been subjected to adverse employment actions prohibited under 29 CFR § 1630.2 (g) (iii) as a result of the defendant perceiving a physical or mental impairment in the plaintiff.

**7.** The reactions and perceptions of the defendant and its employees while interacting with or working with the plaintiff have demonstrated the defendant's perception that the plaintiff has an impairment of the immune system and an impairment of the respiratory system.

**8.** Defendant regards plaintiff as disabled and has mis-classified him as a potential or actual source of contagious disease by assuming plaintiff has an impairment of the immune system and an impairment of plaintiff's respiratory system without any individualized assessment establishing that he needs any "accommodations" (mitigation measures) or is a direct threat.

**9.** The defendant is requiring the plaintiff to accept its "accommodations" (mitigation measures) or suffer the adverse employment action of being terminated.

**10.** Defendant's policy requires plaintiff's participation and defendant will coerce, threaten or retaliate against the plaintiff with adverse employment actions if plaintiff does not comply.

**11.** The defendant took adverse employment actions because of perceiving the plaintiff as impaired.

**12.** The defendant has adopted a new and discriminatory policy that "mandates" accommodations such as intravenous injections which are under

Emergency Use Authorization ("EUA")  and other "mitigation measures" without acknowledging plaintiff's right of refusal.

**13.**    Apparently the defendant regards all unvaccinated employees as having a **condition** (being unvaccinated), and apparently perceives this condition affecting the employee's "respiratory" and "immune" systems.

**14.**    The defendant is not basing its perception of this condition on any medical diagnosis or individualized assessment.

**15.**    The affirming action of regarding plaintiff as impaired and disabled is that plaintiff has suffered adverse employment actions including the coercive, threatening, and intimidating demand to vaccinate or be terminated because of being regarded as disabled.

## STATEMENTS OF FACT

**16.**    The plaintiff is regarded as having a disability by the defendant.

**17.**    The plaintiff therefore has a disability under the protection of the ADA.

**18.**    The plaintiff was an employee of the defendant and is a qualified individual with a disability.

**19.**    The plaintiff does not have an impairment but is being treated by the defendant as if plaintiff has an impairment.

**20.**    The plaintiff duly noticed the defendant that he was claiming protection under the ADA because of being regarded as disabled.

**21.**    The defendant took adverse employment actions because of perceiving the plaintiff as impaired.

**22.**    The defendant has made a record of plaintiff's disability by mis-classifying the plaintiff as having an impairment of the immune system and an impairment of the respiratory system.

**23.**    The plaintiff may proceed under the "regarded as" prong and this court has jurisdiction under the "regarded as" prong of the ADA.

**24.**    The complaint thereby satisfies the criteria for stating a *prima facie* cause of action for these reasons, along with the fact that the defendant has made a record of such disability as further alleged herein.

**25.**    The ADA also protects individuals such as the plaintiff for whom submitting to certain accommodation measures would create impairments. The accommodations include, but are not limited to, taking injections under Emergency Use Authorization (EUA) which are being promoted as vaccines but which are not legally vaccines; submitting to repetitive, non-job-related medical examinations (nasal tissue testing, temperature checks); being placed under isolation, segregation and quarantine without due process; using medical devices for mitigation measures[1] (masks); disclosing plaintiff's medical records and history for non-job-related matters and participating in clinical trials and epidemiological experiments as a condition of employment.

**26.**    If the plaintiff had previously made at least one requests for reasonable modifications, but has since withdrawn such requests as he only requires to be left alone to do his job without being harassed, coerced and discriminated against based upon disability.

**27.**    In fact, defendant's "COVID-19" policies impair the plaintiff from performing his employment duties because the defendant will not permit plaintiff

---

[1] Section 201(h) Food, Drug & Cosmetic Act

to do his job without first submitting to the defendant's accommodations ("mitigation measures").

28.   Defendant's policies also violate the plaintiff rights to medical privacy and informed consent.

29.   Defendant and its policies failed to advise the plaintiff of the absolute risks and absolute benefits for accepting the accommodation of taking  injections, under EUA guidelines, for the contagious disease that the defendant regards the plaintiff as having.

30.   Defendant also failed to advise the plaintiff of his right to accept or reject such accommodation as it is falls under an "emergency use authorization" period.

31.   Additionally,  defendant failed to advise the plaintiff that no vaccines, which have been approved by the Food & Drug Administration, are commercially available to the plaintiff, or are yet in production.

32.    Additionally, the so-called "vaccines" that are being promoted as vaccines do not actually prevent transmission or infection of any contagious disease, specifically regarding the so-called "COVID-19" or "SarsCOV2" purported "diseases".

33.   Additionally the employer has failed to identify or propose other accommodations which do not require medical devices or injections.

34.   The defendant's responses to the requests made by the plaintiff to cease the discrimination and harassment were in fact non-responsive, a true and correct copy of each is included with Exhibit A.

35.   A "pandemic" or "emergency" is not a legal defense for violating rights. The court should be advised that the defendant believes that its legal violations are

justified by claiming there is a "pandemic". This is not a legal defense, just like ignorance of the law is not a legal defense.

36.   The plaintiff requests that the court take judicial notice of the official mortality rates of the State of New York and the United States for the years from 2017, 2018, 2019 and 2020 in which the standard deviation is zero, the very definition of no verifiable "pandemic".

37.   No laws have changed that would create either a new duty of care or a new insurable risk for the defendant; and no new laws have created any new legal duty or obligation for an employer to violate the medical privacy rights of anyone.

38.   Certain employees of the defendant present with symptoms of mental illness.   The court should also note that the defendant's employees: Tony Pellicano, Director of HR, Chritine Bracco, the Director of HR, Kim Kranz, President, along with Mary Frawley, Director of Patient Services and also plaintiff's supervisor Elizabeth Nallan-Potter each present with symptoms of Factitious Disorder by Proxy as defined in the <u>Diagnostic and Statistical Manual for Mental Health</u>, Fifth Edition.  People with this disorder falsely claim another person as sick, injured or having problems functioning, claiming that medical attention is needed. It appears that these employees have each made such a determination of the plaintiff and engaged in conduct which has given rise to this complaint and each may not be competent to serve in their official capacity because of this mental illness.

39.   The plaintiff has been employed continuously by the defendant for approximately twenty years.

**40.**   In March of 2021, the defendant began regarding the plaintiff as having a disability of an impaired immune system and an impaired respiratory system; and began responding to the plaintiff as if he was carrying a contagious disease.

**41.**   Defendant has never conducted the required individualized assessment to determine whether or not the plaintiff is or was ever a direct threat to anyone.

**42.**   On November 28, 2021 the defendant terminated the plaintiff's employment for attempting to exercise and enjoy his rights that are protected by the Americans with Disabilities Act.

**43.**   The defendant had expressed to the plaintiff that regarding these accommodations, the plaintiff's right to informed consent was not violated because he could quit at any time.  This clearly violates 29 CFR Part 1630.9(d).

**44.**   Plaintiff received a memo dated September 1, 2021 from Anthony Pellicano, and Dr. Jason Golbin, titled "Covid-19 Vaccinations". A true and correct copy is included as part of Exhibit A.

**45.**   This memo instructed plaintiff to undertake accommodations for his perceived impairments such as getting tested bi-weekly and undertaking an injection process.

**46.**   On September 27, 2021 Plaintiff attempted to find a resolution with Christine Bracco, Director of HR, by sending a "Notice of Employment Discrimination and Retaliation Based Upon Disability", which asked her to address the plaintiff's request for due process and concerns regarding discrimination based on a perceived disability. Plaintiff met with Christine Bracco, Director of HR on September 28, 2021 and she told the plaintiff there was nothing else they could do and her hands were tied.

**47.**   Plaintiff notified the defendant that he was documenting the discrimination; and encouraged Defendant to review the NY Benchbook Guide compilation of Public Health laws and the due process they require, hoping to draw their attention to the requirement for an actual medical diagnosis prior to prescribing injections and mitigation measures.   No response was given by the defendant.

**48.**      59. On October 5, 2021 Plaintiff filed a Charge of Discrimination and Harassment with the EEOC via email and certified mail.

**49.**   On November 17, 2021 Plaintiff received an email form Christine Bracco, Director of Human Resources and Tony Pellicano, Chief HR Officer, stating, if Plaintiff doesn't receive an injection by November 22, 2021 he will be placed on leave without pay for 2 weeks.  After that time if the plaintiff hasn't submitted to the accommodation of taking medication, the so-called "COVID-19 Vaccination, he would be terminated.   The email threatens plaintiff with the retaliation of docking his pay and being terminated if he does not submit to this policy.

**50.**   Defendant's memo demonstrated the defendant's perception that the plaintiff has an impairment of the immune system and an impairment of the respiratory system and considers the plaintiff as a potential or actual source of a contagious disease without any individualized assessment establishing that plaintiff actually needs any accommodations or is a direct threat; and that defendant is taking adverse employment actions because of this perceived disability.

**51.**   On November 28, 2021 the plaintiff returned from his vacation and received a letter from Christine Bracco, Director of HR, that he has been placed on unpaid leave until December 6, 2021 and his employment will be terminated if he fails to receive the experimental injection.

**52.**   On November 29, 2021, Plaintiff responded to Christine's letter in an email (Exhibit A) explaining that he has no intention of resigning his position. Taking an experimental injection was never a condition of his employment and he is ready, able and willing to return to work.  Plaintiff has made great efforts to timely notice the defendant that he is both fit for service and has complied with all requests for response.

**53.**   In addition, defendant is clearly classifying employees by injection status, making a record of this perceived condition and threatening adverse employment actions against employees who have the condition of being unvaccinated.

**54.**   Defendant's policies also violate the plaintiff rights to medical privacy and informed consent.

**55.**   Defendant's policies fail to advise the plaintiff of the risks and benefits for accepting the accommodation of taking injections for the contagious disease that the defendant regards the plaintiff as having or potentially having.

**56.**   Defendant fails to advise the plaintiff of his right to accept or reject such accommodation as it is falls under an "emergency use authorization" period.

**57.**   Additionally,  defendant fails to advise the plaintiff that no vaccines have been approved by the Food & Drug Administration which are commercially available to the plaintiff, or are yet in production.

**58.**   Additionally, the injections which are being promoted as vaccines do not prevent transmission or infection of any contagious disease, specifically regarding the so-called "COVID-19" or "SARS-Cov2" purported "diseases".

**59.**    Plaintiff was terminated as of November 22, 2021, for being unvaccinated. There is no end-date when defendant will not consider plaintiff's unvaccinated classification as warranting termination.

**60.**    The defendant has a duty of care to aid and encourage the plaintiff in exercising and enjoying his rights under the ADA.  The defendant has thereby neglected its duty of care.

**61.**    Defendant's new policies are illegal because they are discriminatory and constitute adverse employment actions.

**62.**    Defendant has used policies and procedures that are discriminatory, harassing, retaliatory, intimidating, threatening, coercive. The policies interfere with ADA rights and constitute adverse employment actions and this is prohibited under the ADA.

**63.**    Specifically, the defendant has failed to ensure the equal access or accessibility of the premises where the plaintiff is assigned to work.  The plaintiff has thereby been prevented from enjoying equal access and the benefits of employment enjoyed by other employees.

**64.**    The defendant continued without cessation to discriminate against the plaintiff based upon disability as demonstrated by the communications sent to the plaintiff by the defendant.  All written communications are attached as Exhibit A.

**65.**    Such discrimination persists notwithstanding the existence of readily available, well-established, accommodations, including, but not limited to refraining from engaging with the plaintiff in any conversation pertaining to the application of such mitigation measures and/or allowing the plaintiff to work in a

position that would eliminate the need for the accommodation measures offered by the defendant.

**EUA Medical Interventions and Clinical Trials**

66.     The defendant has failed or refused to advise the plaintiff of the absolute risks or absolute benefits of such interventions and failed or refused to advise the plaintiff that he has a choice to accept or refuse such interventions (EUA injections, masking, submitting tissue samples) as set forth in 21 USC §360bbb-3 *et seq.*

67.     Defendant also failed or refused to advise the plaintiff of his right to accept or reject such accommodation as it is falls under an "emergency use authorization" period and the plaintiff is not required to participate in clinical trials, studies or epidemiological experiments as a condition for employment or as an accommodation measure.

68.     Additionally, defendant fails to advise the plaintiff that no vaccines that have been approved by the Food & Drug Administration are commercially available to the plaintiff, or are yet in production.

69.     Additionally, the so-called vaccines that are being promoted as vaccines do not prevent transmission or infection of any contagious disease, specifically regarding the so-called "COVID-19" or "SarsCOV2" purported "diseases".

70.     Additionally, the employer has not proven that there are no other accommodations available which do not require injections or medical devices.

71.     Since defendant is unfortunately attempting to enforce policies even the federal government cannot, it naturally falls on the employer to assume the responsibilities of satisfying informed consent and rights at all levels.

**FDA defines masks when used for mitigation purposes as a medical device.**

72.     Plaintiff requests that this court take judicial notice of Section 201(h) of the Food, Drug and Cosmetic Act and its Final Guidance titled, "Classification of Products as Drugs and Devices & Additional Product Classification Issues: Guidance for Industry and FDA Staff", published in September of 2017, in which the Food & Drug Administration **defines** wearing a mask for mitigation purposes as a medical device and the application of a medical device or contrivance.  A true and correct copy of this is included as Exhibit B.

73.     Plaintiff further requests judicial notice of the fact that the Food & Drug administration has never **approved** wearing such face masks, but only "authorized" them without any supporting medical or clinical data establishing any medical necessity or efficacy for wearing such contrivances.

## 74. ALLEGATIONS OF DEFENDANT'S VIOLATIONS OF TITLE I OF THE ADA, 42 U.S.C. §12101 *et sequitur.*

**75.** Plaintiff re-alleges each of the statements of fact herein and the allegations contained in the preceding paragraphs and the plaintiff's supporting affidavit which is also re-alleged and incorporated herein by reference.

**76.** Title I of the ADA prohibits employment discrimination on the basis of disability in all aspects of employment.

§ 1630.4 Discrimination prohibited.

(a) In general - (1) It is unlawful for a covered entity to discriminate on the basis of disability against a qualified individual in regard to:

(i) Recruitment, advertising, and job application procedures;

(ii) Hiring, upgrading, promotion, award of tenure, demotion, transfer, layoff, termination, right of return from layoff, and rehiring;

(iii) Rates of pay or any other form of compensation and changes in compensation;

(iv) Job assignments, job classifications, organizational structures, position descriptions, lines of progression, and seniority lists;

(v) Leaves of absence, sick leave, or any other leave;

(vi) Fringe benefits available by virtue of employment, whether or not administered by the covered entity;

(vii) Selection and financial support for training, including: apprenticeships, professional meetings, conferences and other related activities, and selection for leaves of absence to pursue training;

(viii) Activities sponsored by a covered entity, including social and recreational programs; and

(ix) Any other term, condition, or privilege of employment.

**No Evidence of Direct Threat**

**77.** Defendant regards plaintiff as disabled with an impaired respiratory system and an impaired immune system; and reacts to and perceives plaintiff

as a potential or actual source of contagious disease without any individualized assessment.

78.     The very nature of discrimination is to take action based upon an unjustified negative attitude or opinion that is not based upon factual evidence. The defendant expresses the attitude toward the plaintiff as if the plaintiff is a direct threat to others, yet has never complied with any of the individual assessment criteria, to wit:

29 CFR Sections 1630.2(r):

"Direct Threat means a significant risk of substantial harm to the health or safety of the individual or others that cannot be eliminated or reduced by reasonable accommodation. The determination that an individual poses a '<u>direct threat</u>' shall be based on an <u>individualized assessment</u> of the individual's present ability to safely perform the essential functions of the job. This assessment shall be <u>based on a reasonable medical judgment that relies on the most current medical knowledge and/or on the best available objective evidence</u>. In determining whether an individual would pose a direct threat, the factors to be considered include:

        (1) The duration of the risk;
        (2) The nature and severity of the potential harm;
        (3) The likelihood that the potential harm will occur; and
        (4) The imminence of the potential harm."

79.     The defendant has made no meaningful efforts to remediate itself on the law, and has only referred to statements made on the CDC's website and the EEOC's website that mention the ADA, but this clearly does not qualify as an individualized medical assessment.

**Prohibited Medical Examinations and Inquiries**

80.     Among other things, Title I prohibits employers (the defendant) from requiring medical examinations or making disability-related inquiries of

employees unless such examination or inquiry is shown to be job-related and consistent with business necessity; see, 42 U.S.C. §12112(d)(4); 29 CFR §1630.14(c).

81.   An employer is entitled only to the information necessary to determine whether the employee can perform the essential functions of the job with or without reasonable accommodations and the defendant has failed to identify any set of facts that would qualify under this limitation.

§ 1630.13(b) Prohibited medical examinations and inquiries.

(b) Examination or inquiry of employees. Except as permitted by § 1630.14, it is unlawful for a covered entity to require a medical examination of an employee or to make inquiries as to whether an employee is an individual with a disability or as to the nature or severity of such disability.

(c) Examination of employees. A covered entity may require a medical examination (and/or inquiry) of an employee that is job-related and consistent with business necessity. A covered entity may make inquiries into the ability of an employee to perform job-related functions.

82.   Defendant has never conspicuously disclosed that complying with an injection requirement, repetitive tissue-testing requirement, quarantining without due process requirement and a facial masking requirement are an **essential function of the job** of PhysicalTherapist; and it was never previously an essential function of plaintiff's job.

83.   The plaintiff must satisfy the PhysicalTherapist job requirements for educational background, employment experience, skills, licenses, and any other qualification standards that are job related; and be able to perform those tasks that are essential to the job, with or without reasonable accommodation.[2]

_____

1.   [2]https://www.eeoc.gov/publications/ada-your-responsibilities-employer

- 16 -

Generally speaking employees that have been performing their essential job functions prior to the employer regarding them as disabled, easily meet this requirement.

84.   The plaintiff's remedy, with assistance from the court, is **to request the defendant to terminate its perceptions** that the plaintiff's unvaccinated condition includes its associated assumptions of regarding the plaintiff's respiratory and immune system as impaired. The perception thus being eliminated, the employee returns to his antecedent *status quo* employment status.

**Medical Records are Confidential**

85.   Defendant appears to be widely sharing its non-job-related medical classification of the plaintiff with many employees without any regard to confidentiality.

> § 1630.13 continues:
>
> (1) Information obtained under paragraph (c) of this section regarding the medical condition or history of any employee shall be collected and maintained on separate forms and in separate medical files and be treated as a confidential medical record, except that:
>
> (i) Supervisors and managers may be informed regarding necessary restrictions on the work or duties of the employee and necessary accommodations;
>
> (ii) First aid and personnel may be informed, when appropriate, if the disability might require emergency treatment; and
>
> (iii) Government officials investigating compliance with this part shall be provided relevant information on request.

(2) Information obtained under paragraph (c) of this section regarding the medical condition or history of any employee shall not be used for any purpose inconsistent with this part.

86.   The defendant is widely sharing its classification of perceiving plaintiff as disabled or impaired and unvaccinated with many employees who are tasked with assessing plaintiff's use of the mitigation measures; which leads to co-workers treating plaintiff as impaired and harassing plaintiff with repetitive emails and intimidating interactions.

87.   Defendant is widely sharing its classification of plaintiff as unvaccinated with numerous employees who are tasked with recording plaintiff's vaccination status; which leads to harassing plaintiff with repetitive emails and threats of termination.

88.   Plaintiff was terminated on November 22, 2021 on the basis of being unvaccinated. These factors are based solely upon defendant's perception of plaintiff's physical condition.

89.   Plaintiff is also repetitively asked to disclose his injection status without any notice regarding the data retention policy or who receives the data and for what purpose.

**Defendant is not running a voluntary health program.**

§ 1630.14

(d) Other acceptable examinations and inquiries. A covered entity may conduct voluntary medical examinations and activities, including voluntary medical histories, which are part of an employee health program available to employees at the work site.

(1) Employee health program. An employee health program, including any disability-related inquiries or

medical examinations that are part of such program, must be reasonably designed to promote health or prevent disease. A program satisfies this standard if it has a reasonable chance of improving the health of, or preventing disease in, participating employees, and it is not overly burdensome, is not a subterfuge for violating the ADA or other laws prohibiting employment discrimination, and is not highly suspect in the method chosen to promote health or prevent disease. A program consisting of a measurement, test, screening, or collection of health-related information without providing results, follow-up information, or advice designed to improve the health of participating employees is not reasonably designed to promote health or prevent disease, unless the collected information actually is used to design a program that addresses at least a subset of the conditions identified. A program also is not reasonably designed if it exists mainly to shift costs from the covered entity to targeted employees based on their health or simply to give an employer information to estimate future health care costs. Whether an employee health program is reasonably designed to promote health or prevent disease is evaluated in light of all the relevant facts and circumstances.

(2) Voluntary. An employee health program that includes disability-related inquiries or medical examinations (including disability-related inquiries or medical examinations that are part of a health risk assessment) is voluntary as long as a covered entity:

(i) Does not require employees to participate;

(ii) Does not deny coverage under any of its group health plans or particular benefits packages within a group health plan for non-participation, or limit the extent of benefits (except as allowed under paragraph (d)(3) of this section) for employees who do not participate;

(iii) Does not take any adverse employment action or retaliate against, interfere with, coerce, intimidate, or threaten employees within the meaning of Section 503

of the ADA, codified at 42 U.S.C. 12203 and 29 CFR Part 1630.14(c).

**90.** Defendant has never conspicuously disclosed that the discriminatory policy is a voluntary health program.

**91.** Defendant has never provided an absolute risk/absolute benefit analysis of the discriminatory policy; this disqualifies the discriminatory policy as a health program by design.

**92.** Defendant has interfered with plaintiff's enjoyment of his ADA rights which lends credence to the allegation that the discriminatory policy is a subterfuge for violating the ADA or other laws prohibiting employment discrimination.

**Limiting, Segregating and Classifying**

**93.** Defendant has violated and continues to violate Title I of the ADA, 42 U.S.C. §12112(b) implemented by 29 CFR Parts 1630.5.

§ 1630.5 Limiting, segregating, and classifying.

It is unlawful for a covered entity to limit, segregate, or classify a job applicant or employee in a way that adversely affects his or her employment opportunities or status on the basis of disability.

**94.** Defendant has violated and continues to violate Title I of the ADA, 42 U.S.C. §12112(b) implemented by 29 CFR Parts 1630.5.

**95.** Defendant has mis-classified plaintiff as "disabled" under the "regarded as" prong and made a "record of" this perceived disability.

**96.** Defendant classified the plaintiff as unvaccinated and has discriminated and retaliated against plaintiff upon this basis.

**97.** Defendant mis-classified the plaintiff based upon perceived disability because it refused to acknowledge plaintiff's enjoyment of his rights under the ADA.

**98.** Defendant terminated plaintiff's employment based on these classifications.

**99.** The law prohibits the defendant from imposing any accommodation measures upon the plaintiff, and yet the defendant has undertaken several adverse employment actions to intimidate, harass, coerce and retaliate against the plaintiff for not accepting defendant's accommodations and otherwise exercising and enjoying his rights under the ADA, specifically, 29 CFR Part 1630.9(d).

**100.** If the plaintiff had previously made at least one request for reasonable modifications, plaintiff has since withdrawn such request.

**§ 1630.9**

(d) An individual with a disability is not required to accept an accommodation, aid, service, opportunity or benefit which such qualified individual chooses not to accept.

**101.** Defendant offered mitigation measures as accommodations to the perceived disability and plaintiff chose not to accept.

**102.** Defendant limited the accommodation measures[3], such as examinations, disclosures of medical records that were not job-related, experimental injections, medical interventions, equipment or products, to only those chosen by the defendant.

**103.** The plaintiff is not required to accept any accommodations and has not waived any rights to informed consent.  The defendant had expressed to the plaintiff that regarding these accommodations, the plaintiff's right to informed

---

[3]  29 CFR Part 1630.2(j)(5)(i)

consent was not violated because he could quit at any time.  This clearly violates 29 CFR Part 1630.9(d).

**104.**  The defendant has not indicated that the accommodations offered are reasonable or necessary to enable the plaintiff to perform essential functions of the employment position held.

**105.**  The plaintiff explained and disclosed to the defendant that the accommodations offered by the defendant would create a disability for the plaintiff that substantially limits one or more major life activities, including, but not limited to: breathing, normal cell growth, normal immune system functioning and communications.

**106.**  The defendant has never expressed that plaintiff's refusal to accept such accommodations would have fundamentally altered the work environment or caused any undue burden upon the defendant.  In fact, the defendant's policies regarding the so-called forced medical examinations and interventions have already fundamentally altered the work environment.

**107.**  In fact, the defendant is not required to provide any accommodation under the "regarded as" prong.

§ 1630.9

(e) A covered entity... is not required to provide a reasonable accommodation to an individual who meets the definition of disability solely under the "regarded as" prong (§ 1630.2(g)(1)(iii)).

**108.**  However, the list of adverse employment actions taken by the defendant against the plaintiff such as harassing the plaintiff with coercive and threatening emails; refusing to process plaintiffs discrimination claims; classifying the plaintiff as unvaccinated; isolating and segregating the plaintiff; falsely classifying the plaintiff as "resigned" based on injection status; and refusing to recognize

plaintiff's rights of refusal, penalizing the plaintiff with two weeks of unpaid leave and then terminating the plaintiff's employment for attempting to exercise and enjoy rights that are protected by the ADA, which demonstrates that defendant retaliated against plaintiff because it perceived him as impaired.

**109.** Plaintiff demands a jury trial.

**110. WHEREFORE**, Plaintiff demands judgment against the defendant for compensatory damages and that the court declare that Defendant's discriminatory actions and/or violations as set forth in this Complaint violate Title I of the Americans with Disabilities Act under 42 U.S.C. §12101 and implemented under 29 CFR Part 1630 *et sequitur*;

**111.** And an order enjoining the defendant, along with its officers, agents, and employees, and all others in active concert or participation with them, from:

**112.** Engaging in discriminatory acts and/or omissions against the plaintiff because of (perceived) disability; and an order enjoining the defendant from implementing practices and policies in a manner that is inaccessible to individuals with disabilities, specifically the plaintiff, within the meaning of Title I of the ADA;

**113.** And ordering defendant to:

**114.** Comply with the requirements of Title I of the Americans with Disabilities Act, 42 U.S.C. §12101; and,

**115.** Provide appropriate auxiliary aids and services; modify policies, practices, and procedures; and/or require alternative methods to ensure the accessibility of its premises and services to individuals with disabilities, specifically the plaintiff; and,

**116.** Take such affirmative steps as may be necessary to restore, as nearly as practicable, each identifiable victim of the defendant's discriminatory conduct to the position that plaintiff would have been in, but for the Defendant's conduct, beginning with the plaintiff; and,

**117.** Take such affirmative steps as may be necessary to prevent the recurrence of any discriminatory conduct and to eliminate, to the extent practicable, the effects of such conduct.

**118.** Award monetary damages to the plaintiff, in an appropriate amount for injuries suffered as the result of Defendant's failure to comply with the requirements of Title I of the ADA, 42 U.S.C. §12101; and,

**119.** Assess a civil penalty against the Defendant in an amount authorized by 42 U.S.C. §12101 to vindicate the public interest and make the plaintiff whole; and,

Order such other relief as the interests of justice may require.

### 120.  COUNT II – COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER THE AMERICANS WITH DISABILITIES ACT

Plaintiff, Andrew Kosiba, sues the defendant, CATHOLIC HEALTH SYSTEMS OF LONG ISLAND, INC., for Retaliation, Coercion, Interference and Intimidation and for declaratory and injunctive relief under Title I of the Americans with Disabilities Act as implemented under 29 CFR Part 1630, *et sequitur*, and alleges the following:

### JURISDICTION AND VENUE

**121.** This court has original and exclusive jurisdiction under Title I of the Americans with Disabilities Act of 1990 and the Americans with Disabilities Act Amendments Act of 2008; 42 U.S.C. §12101 and 42 U.S.C. §12112(a), (b) and (d)(4) as it pertains to "Retaliation, Coercion, Threats and Interference"; as implemented by 29 CFR Part 1630.14(b)(3), (c) & (d) as it pertains to adverse employment actions, employers, medical examinations and interventions.

**122.**  Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. §1391(b)(2) because Plaintiff resides in this District and a substantial part of the events or omissions giving rise to the claims occurred in this District.

**123.**  The incidents and facts giving rise to this complaint have occurred within the last one hundred eighty days.  The plaintiff commenced a complaint against the defendant with the Equal Opportunity Employment Commission (EEOC) on or about the date of October 5, 2021.

### PARTIES

**124.** Plaintiff, Andrew Kosiba, resides in Suffolk County, New York at the address of 33 Neal Path; South Setauket and is a qualified individual with a disability within the meaning of the ADA.  The plaintiff is an employee of the defendant, which is a "covered entity" within the meaning of the Act.

**125.**  The defendant's principal place of business is located at 110 Bi-County Blvd; Farmingdale, New York  11735.

## PLAIN STATEMENT

**126.**  The defendant perceived and mis-classified the plaintiff as impaired and unvaccinated and retaliated against the defendant upon this basis. The affirming adverse employment action of classifying the plaintiff as unvaccinated is that plaintiff was terminated on November 22, 2021 on the basis of being unvaccinated.

## 127.  STATEMENTS OF FACT

**128.**  Plaintiff re-alleges each of the statements of fact herein and the allegations contained in the preceding paragraphs and the plaintiff's supporting affidavit which is also re-alleged and incorporated herein by reference.

**129.**  Defendant and its agents: including, but not limited to,  Christine Bracco refused  to  communicate  with  the  plaintiff;  refused  to  investigate  the discrimination; refused to assist the plaintiff; refused to help him find a resolution to the discrimination or mitigate the harassment.   They each interfered with plaintiff's rights under the ADA.

**130.**  The November 17, 2021 email (Exhibit A) clearly demonstrates that the defendant is regarding  the  plaintiff  as  disabled  and  is  intending  adverse employment actions if plaintiff does not get injected or submit to defendant's accommodation measures by the November 22nd, deadline. It does not mention plaintiff's right of refusal under EUA guidelines4, there is no mention of plaintiff

---

4 Title 21, Chapter 9 V, Part E §360bbb–3a. Emergency use of medical products

having the right to refuse the defendant's accommodations under the ADA5, there is no mention made of plaintiff having the right of informed consent. Defendant is interfering with the plaintiff's rights by obfuscation and by refusing to acknowledge them.

**131.** On November 22, 2021, plaintiff is placed on a two week unpaid leave because defendant regards him as impaired and has taken adverse employment actions against him.

**132.** Plaintiff was terminated as of November 22, 2021 under the disguise of being placed on unpaid leave, for being unvaccinated. There is no end-date when defendant will not consider plaintiff's unvaccinated classification therefore this letter must be seen for what it is: a letter of termination based upon perceived disability.

**133.** Plaintiff also suffered the adverse employment action of choosing between taking an experimental drug, or other mitigation measures with no liability coverage or having his employment terminated without any diagnosis establishing that he is a direct threat and needs such medical treatment in the first place.

**134.** The list of adverse employment actions taken by the defendant against the plaintiff such as: harassing the plaintiff with coercive and threatening emails; refusing to process plaintiffs discrimination claims; classifying the plaintiff as unvaccinated; isolating and segregating the plaintiff; falsely classifying the plaintiff as "resigned" based on injection status;  and refusing to recognize plaintiff's rights of refusal, penalizing the plaintiff with two weeks of unpaid leave and then terminating the plaintiff's employment for attempting to exercise and

---

5 29 CFR Part 1630.9 (d) & (e)

enjoy rights that are protected by the ADA, which demonstrates that defendant retaliated against plaintiff because it perceived him as impaired.

## ALLEGATIONS OF DEFENDANT'S VIOLATIONS
## OF TITLE I OF THE ADA, 42 U.S.C. §12101 *et sequitur.*

**135.**  The ADA also prohibits employers from retaliating against individuals who oppose discriminatory activities or who make charges, testify, assist, or participate in any manner in an investigation, proceeding or hearing under the ADA, Title 42 U.S.C. § 12203 and 29 CFR Parts 1630.12(a) and (b) and Parts 1630.13(b), (c), (d) and Part 1630.14(c), to wit:

**Retaliation**

> § 1630.12 Retaliation and coercion.
>
> (a) Retaliation. It is unlawful to discriminate against any individual because that individual has opposed any act or practice made unlawful by this part or because that individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing to enforce any provision contained in this part.

**136.**  The plaintiff was threatened to be terminated and was terminated because of his unvaccinated condition and has successfully stated a violation of the act simply because he has been subjected to an action prohibited under the law because of perceived physical impairment.

**137.**  The impairment **experienced** by the plaintiff in connection with his respiratory and immune systems is neither transitory nor minor from the defendant's point of view because the defendant has no end date when it will not regard this status as warranting termination.

**138.** Therefore the ruse of placing plaintiff on unpaid leave is also effectively termination because there is no end date.

**139.** Nor can the defendant claim it was unaware of its own perception at the date of termination because the very basis for termination is the unvaccinated condition of the plaintiff and the attendant deficiencies associated with the plaintiff's respiratory and immune systems.

**140.** Defendant adopted a new discriminatory policy and discriminated against the plaintiff based on perceived disability; when plaintiff opposed the unlawful policy, defendant retaliated against the plaintiff by terminating his employment through the ruse of classifying plaintiff as "resigned"; however, the evidence shows that plaintiff was terminated because he was deemed a direct threat without individualized assessment and because he was classified as unvaccinated.

**Coercion, Interference or Intimidation**

§ 1630.12

(b) Coercion, interference or intimidation. It is unlawful to coerce, intimidate, threaten, harass or interfere with any individual in the exercise or enjoyment of, or because that individual aided or encouraged any other individual in the exercise of, any right granted or protected by this part.

**141.** Additionally, the defendant has coerced, intimidated and interfered against the plaintiff by:

**142.** a.) coercing the plaintiff to submit to the accommodation measures, medical interventions and examinations and other health control measures, even though the defendant was duly advised by the plaintiff that the plaintiff was not subject to any health control measures by any court orders, and that the

defendant was not empowered by any court order or other legal duty to impose such interventions, examinations or control measures upon the plaintiff[6]; and,

**143.**  b.) allowing other employees to coerce, intimidate or verbally ridicule and abuse the plaintiff in violation of the defendant's duty of care; and,

**144.**  c.) threatening the plaintiff with the termination of his employment and,

**145.**  d.) threatening the plaintiff with exclusion because of his disability.

**146.**  Defendant coerced the plaintiff on many occasions by demanding plaintiff submit to experimental medical treatments without first performing an individualized assessment to gather the medical evidence necessary to base such a "demand" upon.

**147.**  Defendant effectively coerced the plaintiff by refusing to provide a risk/benefit analysis as required for true informed consent; and refused to recognize the plaintiff's right to refuse medical treatment or participate in a clinical study, thus interfering with plaintiff's enjoyment of protected rights.

**148.**  Defendant interfered with the exercise and enjoyment of plaintiff's rights by refusing to document the discrimination, process his opposition to the prohibited practices or aid the plaintiff in the enjoyment of his rights.

**149.**  Defendant interfered with plaintiff's enjoyment of his rights under the ADA by providing employer "COVID-19 Vaccinations" forms which offered only medical or religious exemption as the available "opt-out" choices. This interfered with plaintiff's ADA rights because it limited plaintiff's right to invoke ADA protections under the 'regarded as" prong, including without limitation, the right

---

[6]Chapters 1.23 through 1.43 of the <u>New York State Public Health Manual</u>.

to be free of discrimination and retaliation based upon disability, such as being terminated or segregated because of one's physical condition.

**150.** The EEOC has offered guidance on interference and states:

> "Examples of interference include: issuing a policy or requirement that purports to limit an employee's rights to invoke ADA protections (e.g., a fixed leave policy that states 'no exceptions will be made for any reason');"7

**151.** Defendant interfered with plaintiff's rights by then classifying plaintiff as noncompliant when plaintiff notified the defendant that plaintiff was exercising his rights of refusal based upon his rights under the ADA and informed consent.

**152.** Defendant deceptively tried to persuade plaintiff that his only remedy to the illegal policy demands would be to ask for a medical or religious exemption from these discriminatory policies and practices, thereby creating a false record that is without legal merit and creates a substantial prejudice against the plaintiff to seek a remedy in court.

**153.** Defendant only presented a medical or religious exemption, and did not mention that ADA accommodations are available; which is obfuscation of and interference with the exercise and enjoyment of plaintiffs rights held under the ADA, particularly 42 USC 12203(b) and 29 CFR 1630.12(b).

**No Undue Burden**

**154.** The defendant has failed to demonstrate any facts constituting any undue burden it would incur because of plaintiff's choice to refuse the accommodations offered by the defendant.  Defendant cited no facts including:

---

7 https://www.eeoc.gov/laws/guidance/questions-and-answers-enforcement-guidance-retaliation-and-related-issues

29 CFR Part 1630 *et sequitur*.

(i) The nature and net cost of the accommodation needed under this part, taking into consideration the availability of tax credits and deductions, and/or outside funding;

(ii) The overall financial resources of the facility or facilities involved in the provision of the reasonable accommodation, the number of persons employed at such facility, and the effect on expenses and resources;

(iii) The overall financial resources of the covered entity, the overall size of the business of the covered entity with respect to the number of its employees, and the number, type and location of its facilities;

(iv) The type of operation or operations of the covered entity, including the composition, structure and functions of the workforce of such entity, and the geographic separateness and administrative or fiscal relationship of the facility or facilities in question to the covered entity; and

(v) The impact of the accommodation upon the operation of the facility, including the impact on the ability of other employees to perform their duties and the impact on the facility's ability to conduct business.

**No Fundamental Alterations**

**155.** The defendant has failed to demonstrate how the plaintiff's refusal to accept the defendant's accommodations would have fundamentally altered the manner in which the defendant carried out its usual operations; in fact, the defendant has already substantially altered the manner in which it normally carries out its operations by attempting to force its accommodations against the will of all of its employees.

## No Safety Risk

**156.** The defendant has failed to identify any legitimate safety requirements that would be necessary for the safe operation of its business. It has failed to identify or demonstrate any safety requirements pertaining to the accommodations that are based on actual risks and not on mere speculation, stereotypes, or generalizations about individuals with disabilities.

## Harm and Injury suffered by the plaintiff.

**157.** The injury suffered by the plaintiff is thereby concrete and particularized and it is actual and imminent. The injury alleged in the complaint, including the pleading and exhibits, clearly sets forth a set of facts that actually occurred and are not conjectural or hypothetical. The injury described therein is at least fairly traceable to the challenged action, conduct and policies of the defendant.

**158.** The harm (injury) already suffered by the plaintiff includes, but is not limited to, having to choose between waving medical privacy rights, and submitting to medical interventions and examinations without the benefits of informed consent, and being regarded as if he has a contagious disease without any individualized assessment according to any medical or scientific standards or having his employment terminated.

**159.** Once violated, these rights cannot be recovered. The medical privacy rights are the plaintiff's intangible property rights which are not required to be waived as a condition of employment and include the right to refuse to participate in any epidemiological experiments or clinical trials.

**160.** Defendant's policies demonstrate soundly and convincingly, that its policies inflict future harm against the plaintiff who is regarded as having a disability or invisible disability and that the defendant fully intends to continue

these policies and that the defendant fully intends to retaliate and continue retaliating against the plaintiff as alleged herein.

**161.** The defendant continues to discriminate against the plaintiff in violation of each of the foregoing sections.   Among other things, this law prohibits the defendant from requiring medical examinations or making disability-related inquiries of the plaintiff unless such examination or inquiry is shown to be job-related and consistent with business necessity.  The defendant is entitled only to the information necessary to determine whether the plaintiff can perform the essential functions of the job with or without reasonable accommodations without posing a direct threat.  The defendant has failed or refused to comply with this law, even making the outrageous claim that the plaintiff can either submit to complying with the accommodations or have his employment terminated, regardless of the defendant's legal duties or the law.

**162.** It is important to note that none of the personnel in human resources that were involved in this matter ever once cited any legal authority that countermands the ADA.

**163.** Furthermore, defendant never cited any legal authority or obligation that has created any new duty of care or insurable risk to impose the discriminatory policies.

**164.** Furthermore, the defendant failed to identify any insurable risk for engaging in the administration of medical examinations, interventions or protecting anyone from what is being claimed as a "pandemic" or "public health danger".

**165.** Additionally, defendant fails to cite any insurable risk for the same or for those suffering any adverse health consequences as a result of complying with

the accommodations administered by unlicensed, untrained, uninsured and un-equipped employees of the defendant.

**166.** Even one's own licensed and insured physician requires informed consent as a condition of administering any medical examination or intervention upon the patient.   No laws have changed and the defendant is without any legal authority or obligation to engage in these practices, and especially engage in harassment, discrimination and retaliation in violation of federal law.

**167.** As a result of Defendant's actions the plaintiff has experienced discrimination, segregation, isolation, retaliation, coercion, interference, loss of wages and termination and disruption in his career.

**168.** Plaintiff demands a jury trial.

**169. WHEREFORE,** Plaintiff demands judgment against the defendant for compensatory damages and that the court declare that Defendant's retaliatory, coercive, interfering and intimidating actions and/or violations as set forth in this Complaint violate Title I of the Americans with Disabilities Act under 42 U.S.C. §12101 and implemented under 29 CFR Part 1630 *et sequitur*;

**170.** And an order enjoining the defendant, along with its officers, agents, and employees, and all others in active concert or participation with them, from:

**171.** Engaging in retaliation, coercion, interference and intimidation and/or omissions against the plaintiff because of his disability; and an order enjoining the defendant from implementing practices and policies in a manner that is inaccessible to individuals with disabilities, specifically the plaintiff, within the meaning of Title I of the Americans with Disabilities Act (ADA);

**172.** And ordering defendant to:

**173.**  Comply with the requirements of Title I of the Americans with Disabilities Act, 42 U.S.C. §12101; and,

**174.**  Provide appropriate auxiliary aids and services; modify policies, practices, and procedures; and/or require alternative methods to ensure the accessibility of its premises and services to individuals with disabilities, specifically the plaintiff; and,

**175.**  Take such affirmative steps as may be necessary to restore, as nearly as practicable, each identifiable victim of the defendant's discriminatory conduct to the position that he would have been in, but for the Defendant's conduct, beginning with the plaintiff; and,

**176.**  Take such affirmative steps as may be necessary to prevent the recurrence of any retaliation, coercion, interference and intimidation and to eliminate, to the extent practicable, the effects of such conduct.

**177.**  Award monetary damages to the plaintiff, in an appropriate amount for injuries suffered as the result of Defendant's failure to comply with the requirements of Title I of the ADA, 42 U.S.C. §12101; and,

**178.**  Assess a civil penalty against the Defendant in an amount authorized by 42 U.S.C. §12101 to vindicate the public interest and make the plaintiff whole; and,

**179.**  Order such other relief as the interests of justice may require.

### 180.  COUNT III – COMPLAINT FOR WRONGFUL TERMINATION OF EMPLOYMENT

**181.**  The plaintiff, Kosiba, sues the defendant, CATHOLIC HEALTH SYSTEMS OF LONG ISLAND, INC., for wrongful termination of employment and alleges the following:

### JURISDICTION AND VENUE

**182.**  The Eastern District Court has original jurisdiction over claims for wrongful termination for employment and related employment agreements.

**183.**  The plaintiff resides in Nassau County and his mailing address is 33 Neal Path; South Setauket, New York.

**184.**  The defendant is a resident in the state of New York, with its principal place of business is located at 110 Bi-County Blvd; Farmingdale, New York  11735.

**185.**  The material facts for all times material to this complaint took place in Nassau County, New York.

### STATEMENTS OF FACT

**186.**  On the date of November 22, 2021, the plaintiff's employment was terminated without notice.

**187.**  The plaintiff advised the defendant on several occasions by documenting the harassment and coercion via plaintiff's confidential communications filed with the Human Resources.

**188.**  This documentation addressed the fact that defendant's actions were not legal and not binding upon the plaintiff and that the defendant had no duty to act under these new terms.   True and correct copies of these written communications are attached as Exhibit A.

**189.** The defendant ignored the plaintiff, refused to do an intake, falsely declared plaintiff has "resigned" and terminated his employment for discriminatory reasons on November 22, 2021.  The communications exhibited with this complaint are included as Exhibit A.

**190.** Defendant is not a licensed physician and not supervised under any licensed physician yet wants to impose a medical intervention upon the plaintiff as a condition for employment in violations of the plaintiff's right to informed consent and Americans with Disabilities Act.

**191.** Defendant stated that while it may require a forced medical intervention without any medical qualification or licensing, the plaintiff is somehow required to get permission from a licensed physician in order to exercise his right to informed consent.  Why does the plaintiff need a licensed physician to exercise his right to informed consent and the defendant does not need any licensed physician to violate plaintiff's rights regarding medical interventions?

### ALLEGATIONS

**192.** Plaintiff re-alleges the foregoing and incorporates each fact herein and further alleges as follows,

**193.** The plaintiff's employment was wrongfully terminated by the defendant for discriminatory reasons.

**194.** Upon defendant's change in the employment conditions purportedly requiring the plaintiff to get EUA injections, wear a mask while working, and other mitigation measures, plaintiff was suddenly expected to waive his rights to informed consent on the unfounded presumption that the plaintiff had an impaired immune system, impaired respiratory system, and was a carrier of a

contagious disease, all without having first made any individualized assessment as to whether or not the plaintiff was a direct threat to anyone.

**195.** Beginning from the date the plaintiff was hired, plaintiff has been compensated for his labor and the services he has provided the defendant at regular intervals.  Plaintiff had a reasonable expectation to continue working for the defendant.  The defendant's termination of the plaintiff's employment was in violation of the employment contract and was made without notification or adequate notification to the plaintiff.

**196.**  The terms of the job description are alleged herein and include the written policies of the defendant, a true and correct copy of which is attached as Exhibit C.

**197.**  The conditions of plaintiff's employment with the defendant did not require the defendant to waive any of his rights.

**198.**  The conditions of the plaintiff's employment with the defendant did not require the plaintiff to accept the defendant's medical advice.

**199.**  The conditions of the plaintiff's employment with the defendant did not include terms that allowed the defendant to engage in the unlicensed practice of medicine and the defendant is not insured or otherwise indemnified for practicing medicine.

**200.**  The conditions of the plaintiff's employment with the defendant did not include terms that made the defendant the plaintiff's physician or otherwise require the plaintiff to act upon medical advice given by the defendant.

**201.**  Plaintiff's employment was wrongfully terminated in retaliation for exercising his rights under the ADA.  Also, the plaintiff has certain intangible private property rights which include the right to care for his own health and

choose his own physician and health care practices while also avoiding habits and practices that the plaintiff believes might ruin or risk his good health.

**202.** The plaintiff also has the intangible private property right to make decisions that affect his health with informed consent; that is, plaintiff has a right to review all risk and benefit analyses and results from relevant clinical studies prior to making any decision to adopt new practices regarding his health.

**203.** The defendant refused to comply with the law and violated the plaintiff's property rights, specifically those enumerated under the state's Patient's Bill of Rights and informed consent.

**204.** Defendant is an employer and prohibited from firing or otherwise retaliating against employees, specifically the plaintiff, who report workplace safety violations or participate in investigations into such violations.

**205.** New conditions of employment violated the Americans with Disabilities Act and involved the defendant's conduct which included imposing mitigation measures and retaliation in violation of the ADA.

**206.** New conditions of employment violated the long-standing safety standards adopted by the Occupational Safety and Health Administration and involved the defendant's conduct which included imposing medical interventions in violation of the law prohibiting the unlicensed practice of medicine.

**207.** Plaintiff's employment was also wrongfully terminated because the plaintiff refused to accept a medical intervention sought to be imposed by the defendant where such medical intervention was not permitted to be imposed by law or to be imposed by the defendant and violated the plaintiff's right to informed consent.

**208.**  As a direct and proximate result of the defendant's actions, the plaintiff's employment was wrongfully terminated by the defendant.

**209.**  The defendant's actions were willful and negligent.   After plaintiff's objections and attempts to re-mediate the defendant on the law and his rights, the defendant continued violating the law and violating the plaintiff's rights as alleged herein.

**210.**  The defendant did not act under color of law or claim of lawful authority. The defendant had no legal duty to require the plaintiff to undertake <u>any</u> medical intervention much less purportedly requiring the plaintiff to get injections, submit tissue samples or wear a surgical mask or mask of any kind as a new condition of his employment.

**211.**  The plaintiff was not acting under any authority of law or court order. Again, the defendant was under no legal duty to violate the law as alleged herein, and no authority or court order permitted the defendant to violate the law or violate the plaintiff's rights as alleged herein. The plaintiff never waived any of his rights at any time.

**212.**  No employee or agent of the defendant is licensed, competent or authorized to give medical advice, such as requiring employees such as the defendant to get injections, wear a mask, or submit to temperature or tissue testing.

**213.**  Additionally, neither the defendant nor any of its employees or agents are insured or indemnified to collect tissue samples or interpret vital statistics (nasal swabs and temperature readings which can lead to being quarantined without due process).

**214.** Defendant has no authority to require the plaintiff to act upon its medical advice (injections, masks); disclose his vital statistics (temperature); or submit to any medical examination by giving tissue samples (nasal testing) as a new condition of the plaintiff retaining his employment with the defendant.

**215.** The defendant is not authorized to violate the rights of the plaintiff, nor is the defendant required to break the law, or operate beyond its charter as a new condition of the plaintiff's employment that was never considered at the time he was hired.

Plaintiff demands a jury trial.

**216. WHEREFORE** plaintiff demands judgment against the defendant for wrongful termination together with costs and attorney fees and other relief as this court deems appropriate.

## COUNT IV – LOST WAGES

**217.** Plaintiff re-alleges the foregoing and incorporates each fact herein and further alleges as follows,

**218.** Plaintiff was wrongfully terminated on the date of November 22, 2021 and based upon his rate of compensation, the plaintiff is entitled to lost wages in the approximate amount of and based upon her yearly rate of compensation, the plaintiff is entitled to a minimum of lost wages in the approximate amount of one hundred ten thousand dollars ($110,000) not including additional benefits which may be calculated by the court, plus interest as calculated by the laws of the State of New York.

**219. WHEREFORE** plaintiff demands judgment against the defendant for lost wages in the amount of $110,000 as alleged herein, together with costs and attorney fees and other relief as this court deems appropriate.

## COUNT V – BREACH OF CONTRACT

**220.**  Plaintiff re-alleges the foregoing and incorporates each fact herein and further alleges as follows,

**221.**  It was an employment contract that was commenced between the plaintiff and defendant in November of 2000 with an offer of employment and continued without interruption until plaintiff's employment was terminated as alleged herein.

**222.**  The Plaintiff's job title was Physical Therapist and he was paid $110,000 per year.

**223.**  In addition to the regular remuneration paid by the defendant to the plaintiff as alleged, the defendant provided the plaintiff with annual incentive bonus as an additional benefit under the employment agreement.

**224.  WHEREFORE** plaintiff demands judgment against the defendant in the amount of no less than the amount of $110,00 plus costs and attorney fees and other relief as this court deems appropriate.

## COUNT VI – BREACH OF IMPLIED CONTRACT

**225.**  Plaintiff re-alleges the foregoing and incorporates each fact herein and further alleges as follows,

**226.**  It was an employment contract that was commenced between the plaintiff and defendant in November of 2000 with an offer of employment and continued without interruption until plaintiff's employment was terminated as alleged herein.

**227.**  The Plaintiff's job title was Physical Therapist and he was paid $110,00 per yearly.

**228.**  In addition to the regular remuneration paid by the defendant to the plaintiff as alleged, the defendant provided the plaintiff with annual incentive bonus as an additional benefit under the employment agreement.

**229. WHEREFORE** plaintiff demands judgment against the defendant in the amount of no less than the amount of $110,000 plus costs and attorney fees and other relief as this court deems appropriate.

DATED this _8th_ day of December 2021.

Andrew Kosiba, Plaintiff