UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ANDREW KOSIBA,

                              Plaintiff,

                                               REPORT AND RECOMMENDATIONS
       -against-                                21-CV-6416 (GRB)(ARL)

CATHOLIC HEALTH SYSTEM OF LONG
ISLAND, INC.,

                              Defendant.
-------------------------------------------------------------X
**LINDSAY, Magistrate Judge:**

      The plaintiff, Andrew Kosiba ("Kosiba"), brings this employment discrimination action

against Catholic Health System of Long Island, Inc. ("CHSLI"), alleging violations of the

Americans with Disabilities Act (the "ADA"), 42 U.S.C. §§ 12101, *et seq*. Before the Court,

on referral from District Judge Brown, is CHSLI's Motion to Dismiss the Second Amended

Complaint and Kosiba's Cross-Motion to file a Third Amended Complaint. For the reasons set

forth below, the undersigned respectfully recommends that CHSLI's Motion to Dismiss be

granted and Kosiba's Motion to Amend be denied.

## BACKGROUND

### A.    Factual Background

      The following facts are drawn from the Second Amended Complaint and are accepted as

true for purposes of the instant motion. *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d

Cir. 1993). These facts do not constitute findings of fact by the Court. *See Colvin v. State*

*University College at Farmingdale*, No. 13-CV-3595 (SJF)(ARL), 2014 U.S. Dist. LEXIS

85678, 2014 WL 2864224, at *1 n.1 (E.D.N.Y. June 19, 2014).

Kosiba is a resident of South Setauket.  Second Am. Compl. ¶ 9.  From November 2000 to December 2021, Kosiba was employed by Nursing Sisters Home Care, Inc. d/b/a Catholic Home Care ("Catholic Home") as a physical therapist .  *Id.* ¶ 14.  CHSLI is the sole corporate member of Catholic Home.  Def.'s Mem. at 1.

In March 2021, in response to the Covid-19 pandemic, Catholic Home instituted certain "mitigation measures" "like PPE wearing, daily temperature checks, mask wearing and PCR tests." Second Am. Compl., Kosiba Aff. ¶ 11.[1]  According to CHSLI, as a participant in Medicare and Medicaid programs, it was required to implement infection prevention policies and Covid-19 vaccine requirements.  Def.'s Mem. at 1 (citing 42 C.F.R. § 484.70).  Catholic Home was also subject to New York's vaccine mandate for healthcare workers.  *Id.* (citing 10 N.Y.C.R.R. § 2.61).  Kosiba asserts that he complied with those Covid-19 protocols in the "beginning because no one knew what was happening and [he] thought it was for [his] protection. . .." Second Am. Compl., Kosiba Aff. ¶ 11.  At some point, however, he started to disagree with the measures [that] were mandated and to believe that Catholic Home was "following political rules," "not science."  *Id.*  It is at that point that Kosiba began to argue that he had protected status under the ADA.  Second Am. Compl. ¶ 47.

To this end, Kosiba contends that Catholic Home refused to acknowledge his right to refuse to comply with the Covid-19 protocols under the ADA.  *See* Second Am. Compl., Kosiba Aff. ¶ 11.  Specifically, Kosiba began to claim that he had "a disability which preclude[d] [him] from wearing a face covering for medical reasons and for reasons of self-care, breathing, and communication." *Id*. ¶ 9.  He also alleged that he had "been diagnosed with conditions that contra-indicate wearing mask or limiting [his] oxygen or re-breathing [his] expelled bacteria.  *Id.*

---

[1] Kosiba attached an Affidavit in Support of Complaint to his Second Amended Complaint that contain several material background facts.  *See* ECF No. 25.

Nevertheless, by late spring of 2021, Kosiba was advised that unvaccinated employees needed to continue wearing masks.  *Id*. ¶ 15.  He states that the policy made him "feel angry and stressed" because he was openly being classified as unvaccinated.  *Id.*

In August 2021, Kosiba then tested positive for Covid-19.  *Id*. ¶ 16.  Catholic Home advised him that they were going to notify all of the patients he came in contact with in the prior three days.  *Id.*  Kosiba states that he was "furious" that "they would share his health information like that."  *Id.*

Shortly thereafter, as part of its Covid-19 protocols, Catholic Home advised all of its employees that they had to be vaccinated.  *Id.* ¶ 17.  Specifically, by late September 2021, Kosiba says he was "classified as unvaccinated" and advised by Christine Bracco ("Bracco") in Human Resources that he had to have an "EUA injection by October 7, 2021 or . . . be fired." *Id.* ¶ 17.  Kosiba wanted to "opt out of this new policy requirement" and refused to be vaccinated. *Id.*  He claims that he felt coerced to get an injection.  *Id.* ¶¶ 9, 13.  In fact, Kosiba asserts that the fact that Catholic Home was keeping track of his vaccination status felt "threatening." *Id.* ¶ 13.

Kosiba further alleges that he had "the right to make [his] own health choices and that no law [had] been suspended regarding [his] right to Informed Consent during [that] time . . .." *Id.* As such, on September 27, 2021, Kosiba sent Bracco a "Notice of Employment Discrimination and Retaliation Based upon Disability," which asked her to address his "request for due process and concerns regarding discrimination based on a perceived disability." *Id.* ¶ 18.  Kosiba explains in the complaint that CHSLI  perceived him as "substantially limited with impaired immune and respiratory systems." Second Am. Compl. ¶ 23.  CHSLI interprets this claim to mean that it regarded Kosiba as having Covid-19.  Def.'s Mem. at 3.  In any case, in that Notice,

he also asked Catholic Home to "reveal when it had conspicuously disclosed that complying with a "Covid-19 vaccine" requirement, testing requirement, or masking requirement was an essential function of [his] job."  Second Am. Compl., Kosiba Aff. ¶ 23.

In response, Bracco scheduled a meeting for the following day.  *Id.* ¶ 19.  Upon arrival, Kosiba was forced to have a temperature check.  *Id.*  Kosiba insisted it was unnecessary as he has "sent in a temp check to his supervisor that morning," but was nonetheless made to comply. *Id.*  During the meeting, Bracco reported that there was nothing else [Catholic Home] could do and her hands were tied.  *Id.*  Kosiba felt his Notice of Discrimination was not addressed and his questions were not answered.  *Id.*

Two days later, on September 30, 2021, Kosiba was informed that vaccinated employees were being given a sticker to identify them as such.  *Id.* ¶ 20.  Kosiba claims this policy made him feel excluded.  *Id.*  For this reason, on October 5, 2021, Kosiba filed a Charge of Discrimination and Harassment with the Equal Employment Opportunity Commission ("EEOC").  *Id.* ¶ 21.  Then, on October 16, 2021, Kosiba was assigned to a patient who had a "Vaccinated Staff Only" stipulation on file.  *Id.* ¶ 22.  Kosiba says that he was saddened to see that CHSLI was following such a discriminatory policy and felt that it should have advised the patient that they could not discriminate against him based on his unvaccinated status.  *Id.*

At some point during the same time period, Kosiba also requested a religious exemption from the vaccine mandate.  On November 3, 2021, in response to that request, Bracco sent Kosiba the following email:

> I write to you with respect to your pending request for a religious exemption from the New York State COVID-19 vaccine mandate for healthcare workers. As you [are] no doubt aware, on Friday October 29, 2021, the U.S. Court of Appeals for the 2nd Circuit vacated a lower court preliminary injunction which blocked New York State from preventing employers from considering requests for religious exemptions from the mandate.  In so doing, the Court of Appeals

has permitted the New York State COVID-19 vaccine mandate for healthcare workers to proceed without the availability of religious exemptions.

The U.S. Court of Appeals has promised a more detailed opinion, and we have learned that the litigants challenging the vaccine mandate have sought relief from the U.S. Supreme Court.  We await further direction in the legal proceedings but must share that the U.S. Supreme Court recently permitted a similar vaccine mandate in the State of Maine to proceed without the availability of religious exemptions.

As we await further direction from the courts, which we expect in the very near term, you will be permitted to continue to work, subject to existing PPE and testing requirements [for unvaccinated workers].

CHSLI Home Care and Good Shepherd Hospice currently perform COVID testing every Monday and Wednesday, between 8am and 1pm, in Farmingdale.  Please reach out to Jennifer Temple, Employee Health Nurse, to schedule your bi-weekly COVID test, beginning  the week of 11/8/2021.

See Second Am. Compl. Attachments.[2]

On November 5, 2021, Kosiba received an email reminding him that he would be required to have bi-weekly Covid-19 tests.  *Id.* ¶ 23.  That email, sent from Jennifer Temple ("Temple"), stated:

Good Morning,

As per previous emails from Human Resources, bi-weekly COVID testing will be required by CH for any employee who is not COVID vaccinated effective week of 11/7/2021, and every other week thereafter.  COVID swabbing is performed in Employee Health in Farmingdale on Mondays and Wednesdays between the hours of 8 am and 1 pm. You may get tested here or choose to be tested elsewhere. However, if you are tested elsewhere, it is your responsibility to promptly provide me with the results every other week. The test must be PCR, as rapid tests are not acceptable.  If you'd like to be tested here in Farmingdale, bi-weekly, you will choose either Monday or Wednesday, and that will be your regular testing day.  Please reach out to me via email or practice unite to schedule your day ASAP.  If you are already coming to me for testing, please continue to come as usual.  If you are being tested elsewhere, or plan to begin testing elsewhere, please let me know where you are being tested. If  you have already communicated with me in regard  to your testing plans, please disregard this email. As always, feel free to contact me with any questions or concerns.

---

[2] There are several unmarked attachments to the Second Amended Complaint.

Thank you,

Jennifer

*See id.*

On November 9, 2021, Temple send Kosiba a follow-up email indicating that he had not provided her with information on where or when he planned to be tested. *Id.* On November 11, 2021, Kosiba responded that he had already spoken to human resources about the "mandates, vaccination, testing" and he wanted the harassment to stop. *Id.* In the email, he further indicated that the policies were discriminatory and that he was not asking for an accommodation – he simply wished to be left to perform the job he was hired for over twenty years ago without interruption." *Id.*

On November 10, 2021, Bracco sent Kosiba another email that included a copy of the CHSLI Policy for his review. *Id.* That policy provides:

> As an employee with a pending request for an accommodation which remains under review, you will be required to have negative COVID-19 test results on a bi-weekly basis in [order to] continue reporting to work. COVID testing may be conducted in the Employee Health department or you may choose an outside testing site that is more convenient [as long] as the test results are submitted within five (5) days of the test date.

*Id.* However, five days later, CHSLI received further guidance from the New York State Department of Health ("DOH"). In light of that guidance, CHSLI issued the following notice:

> • All employees in "positions such that if they were infected with COVID-19, they could potentially expose other covered personnel, patients or residents to the disease" must have the first dose of the COVID-19 vaccination by Monday, November 22, 2021. This includes all individuals working in hospitals, nursing homes, home care and hospice who have in-person interaction with co-workers, patients or residents as part of their job responsibilities.
>
> • Employees who do not receive the first dose of the vaccination by Monday, November 22, 2021 will be placed on a two week unpaid leave.

After that time  employees who still have not received the first dose will be terminated and receive their accrued unused vacation time in accordance with our normal policies.  However, we will maintain health and welfare benefits until the end of the year. Employees who are terminated due to this action and are fully vaccinated within six months of termination will be eligible to return to work in an available position for which they qualify with no loss of seniority.

•      During this time, [CHSLI] will consider on an individualize[d] basis whether there are reasonable accommodations available, which might permit employees who have applied for an exemption to the vaccine due to their sincerely held religious beliefs to continue working remotely such that there would be no in-person contact with co-workers, patients or residents.  We must advise, however, that most if not all of the positions held by those who have applied for religious accommodations require in-person work in covered facilities such that co-workers, patients or residences could be exposed to COVID-19 should the employee become infected.

•      As a result, we strongly encourage our employees who have not yet been vaccinated to consider receiving the first dose of the vaccine by Monday, November 22, 2021 in order to ensure their continued employment. We ask that you notify your manager by Friday, November 19th if you intend to receive the vaccination so that work schedules can be planned accordingly.

*Id.*

On November 29, 2021, Kosiba advised Bracco that he had no intention of resigning his position as there was no evidence that he was a threat to anyone's health.  *Id.*  He further stated that if CHSLI intended to fire him, he would need a letter stating that he was fired.  *Id.*  The following day, Kosiba sent Bracco another email indicating that he was ready willing and able to work.  *Id.*  On December 1, 2021, CHSLI denied Kosiba's request for a religious accommodation, explaining that as an employee whose job required patient contact, he would need to comply with the vaccine mandate.  *Id.*  Kosiba responded by email that "a federal judge ha[d] ruled in favor of healthcare workers and has deemed the mandate put forth by the Biden administration to be unconstitutional nationwide." *Id.*  In response, on December 2, 2021, Bracco sent Kosiba another email clarifying that the referenced federal court decision had no

impact on the New York State vaccine mandate for healthcare workers which was upheld by the Second Circuit.

Nonetheless, Kosiba refused to be vaccinated during the two week unpaid furlough that began in late November an ended Monday, December 6, 2021.  Accordingly, on December 7, 2021, Kosiba was terminated.  *Id.*

### B.    Procedural Background

Kosiba filed the Complaint in this action on December 8, 2021.  ECF No. 1.  On December 13, 2021, District Judge Brown issued an Order to Show Cause, directing Kosiba to file an affidavit explaining why the Court should excuse his failure to exhaust.  ECF No. 5. In response, Kosiba filed an affidavit stating that he had filed a complaint with the EEOC in October 2021, but that the EEOC was "participating in the discrimination" by ignoring his complaint.  ECF No. 7.  Based on his response, on January 21, 2022, the Court dismissed the Complaint without prejudice based on Kosiba's failure to exhaust his administrative remedies.

On February 24, 2022, Kosiba submitted a motion to reopen the case after he received a Right to Sue letter.  ECF No. 12.  That request was granted.  A few days later, CHSLI sought an extension of time to respond to the Complaint.  Before the Court could respond to CHSLI's request, Kosiba filed an Amended Complaint.  ECF No. 14.  As such, on April 4, 2022, CHSLI filed a letter with Judge Brown requesting a premotion conference to discuss CHSLI's anticipated Motion to Dismiss the Amended Complaint.  ECF No. 16.  Upon receipt, District Judge Brown issued an order scheduling the premotion conference for June 8, 2022.  However, later that same day, District Judge Brown cancelled the conference and entered an order referring all pre-trial proceedings and all dispositive pretrial motions to the undersigned.

On April 20, 2022, Kosiba filed a "brief" in opposition to CHSLI's premotion conference letter.  ECF No. 18.  Upon receipt, the undersigned waived the premotion conference requirement and set a briefing schedule for the anticipated motion to dismiss.  However, on May 10, 2022, while the parties were to be briefing the Motion to Dismiss the Amended Complaint, Kosiba filed a Motion Requesting the Appointment of a Special Master, alleging that the Court could not impartially preside over this lawsuit because "[t]he court's [COVID] policies [were] nearly identical to the defendant's . . ." ECF No. 22.  The Court denied the motion on May 18, 2022, and that same day, Kosiba sought leave to file a Second Amended Complaint.  ECF No. 25.  Six days later, he also filed an Amended Motion to Appoint a Special Master, claiming once again that a conflict existed because the Court was "involved in the same violation as are alleged against the defendant."  ECF No.  26.

District Judge Brown denied Kosiba's Amended Motion to Appoint a Special Master. Shortly thereafter, the undersigned granted Kosiba leave to file and serve the Second Amended Complaint.  In doing so, the Court extended the briefing schedule in order to provide CHSLI with an opportunity to address the new operative pleading.  Kosiba failed to file Second Amended Complaint as directed but, given the undersigned's direction, for the purposes of this motion, CHSLI has correctly treated the proposed Second Amended Complaint annexed to ECF No. 25 as the operative pleading.

## DISCUSSION

### A.      Standards of Review

### 1.      Motion to Dismiss -  Rule 12(b)(6)

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  In doing so, the Court set forth a two-pronged approach to be utilized in

9

analyzing a motion to dismiss.  District courts are to first "identify [ ] pleadings that, because

they are no more than conclusions, are not entitled to the assumption of truth."  *Id.* at 679.

Though "legal conclusions can provide the framework of a complaint, they must be supported by

factual allegations."  *Id.*  Second, if a complaint contains "well-pleaded factual allegations, a

court should assume their veracity and then determine whether they plausibly give rise to an

entitlement to relief."  *Id.*  "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it

asks for more than a sheer possibility that a [d]efendant has acted unlawfully."  *Id*. at 678 (citing

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007) (internal citations omitted)).

    For the purposes of a Rule 12(b)(6) motion, "a district court must confine its

consideration to facts stated on the face of the complaint, in documents appended to the

complaint or incorporated by reference, and to matters of which judicial notice may be taken."

*Serdarevic v. Centex Homes, LLC,* 760 F. Supp. 2d 322, 328 (S.D.N.Y. 2010) (quotation

omitted); *see Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002).  In addition,

"in some cases, a document not expressly incorporated by reference in the complaint is

nevertheless 'integral' to the complaint and, accordingly, a fair object of consideration on a

motion to dismiss."  *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).  Finally, the Court

may take judicial notice of a fact that is not subject to a reasonable dispute because it: "(1) is

generally known within the trial court's territorial jurisdiction or (2) can be accurately and readily

determined from sources whose accuracy cannot reasonably be questioned." *See* Fed. R. Evid.

201(b).

## 2.    Motion to Amend – Rule 15

Rule 15(a) provides that leave to amend 'shall be freely granted when justice so requires." "Only 'undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party...[or] futility of the amendment' will serve to prevent an amendment prior to trial." *Mathon v. Marine Midland Bank, N.A.*, 875 F. Supp. 986, 1002 (E.D.N.Y. 1995) (quoting *Foman v. Davis*, 371 U.S. 178, 182, 9 L. Ed. 2d 222, 83 S. Ct. 227, 230 (1962)). An amendment is considered futile if the proposed claim would not survive a motion to dismiss made pursuant to Fed. R. Civ. P. 12(b)(6). *See Parker v. Columbia Pictures Indus.,* 204 F.3d 326, 339-40 (2d Cir. 2000). Accordingly, in determining whether a proposed amendment would be futile, the claims must be construed in the light most favorable to the plaintiff. *See Foman,* 371 U.S. at 182. To overcome objections of futility, the plaintiff must merely show that it has at least colorable grounds for relief. *Copantitla v. Fiskardo Estiatorio, Inc.,* 2010 U.S. Dist. LEXIS 33430 *11 (S.D.N.Y. Apr. 5, 2010).

## B.    CHSLI's Motion to Dismiss the ADA Claims

Kosiba has asserted two claims against CHSLI pursuant to the ADA:  discrimination for perceived disability (Count I) and retaliation (Count II). The Court begins its analysis with Kosiba's discrimination claim.

## 1.    Count I – Discrimination

To make out a *prima facie* case under the ADA, a plaintiff must establish that:

> (1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability.

*Harvin v. Manhattan & Bronx Surface Transit Operating Auth.*, 767 Fed. Appx. 123, 127 (2d Cir. 2019) (citing *Jacques v. DiMarzio, Inc.,* 386 F.3d 192, 198 (2d Cir. 2004)).  CHSLI does not dispute that it is an employer subject to the ADA.  It does, however, argue that Kosiba has failed to allege facts plausibly establishing the remaining elements of his discrimination claim.

To begin with, CHSLI contends that Kosiba is not a qualified individual with a disability. "Title 42 U.S.C. § 12102 defines a disability as:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities ...;
>
> (B) a record of such an impairment; or
>
> (C) being regarded as having such an impairment.

*Id.*  However, employees cannot bring claims for having a disability or being regarded as having a disability where the alleged perceived impairment is "transitory and minor."  See *Hernandez v. Int'l Shoppes, LLC,* 100 F. Supp. 3d 232, 250 (E.D.N.Y. 2015) (citing § 12102(3)(B)).  "A transitory impairment is defined as an impairment with an actual or expected duration of [six] months or less." *Id.*  Accordingly, to the extent Kosiba alleges that CHSLI perceived him as having a "contagious disease," or erroneously classified him "as being substantially limited with an impaired immune system and an impaired respiratory system," *see* Second Am. Compl. ¶ 45, those impairments are not cognizable disabilities under the ADA.  Indeed, as CHSLI notes in its memorandum, courts throughout this country have found that employer's perception that its employee had Covid-19 is not a cognizable disability under the ADA.  *See e.g., Thompson v. City of Tualatin,* No. 3:21-CV-01587-MO, 2022 WL 742682, at *2 (D. Or. Mar. 11, 2022) (being perceived as having Covid-19 is not a cognizable disability under the ADA); *Cupi v. Carle Bromenn Med. Ctr.,* No. 1:21-CV-01286, 2022 WL 138632, at *4 (C.D. Ill. Jan. 14, 2022)

(rejecting theory that defendant perceived plaintiff as being disabled due to either her fever or COVID-19); *McCone v. Exela Techs., Inc.*, No. 6:21-CV-912-CEM-DCI, 2022 WL 801772, at *4 (M.D. Fla. Jan. 14, 2022)(being infected with COVID-19, standing alone, does not meet the ADA's definitions of disability or impairment); *Rice v. Guardian Asset Mgmt., Inc.,* No. 3:21-CV-00693-AKK, 2021 WL 4354183, at *2 (N.D. Ala. Aug. 19, 2021), *aff'd*, No. 21-13188, 2022 WL 1763816 (11th Cir. June 1, 2022)(the fact that defendant followed public health protocols does not establish that it regarded plaintiff as disabled).

Equally unavailing is Kosiba's passing reference to the fact that he suffers from a disability that precludes him from wearing a face-covering. *See* Kosiba Aff. ¶ 9. This second claim of disability is pled with no specificity. Indeed, Kosiba has not provided a single detail concerning the alleged medical condition that "contra-indicate[s] wearing masks" or "limiting [his] oxygen or re-breathing [his] expelled bacteria." Second Am. Compl., Kosiba Aff. ¶ 9. *See McDonald v. California Dep't of Motor Vehicles in Sacramento Cnty.*, No. 221 CV 1561 KJM DB PS, 2022 WL 1460209, at *3 (E.D. Cal. May 9, 2022), report and recommendation adopted, No. 221 CV 1561 KJM DB PS, 2022 WL 3578701 (E.D. Cal. Aug. 19, 2022) (dismissing claim that plaintiff was regarded as having a disability based on conclusory allegations that he had a medical exemption and could not wear a mask). Moreover, in direct contrast to his current claim that he suffers from an actual disability, Kosiba acknowledges that initially he complied with the Covid-19 protocols "because no one knew what was happening and [he] thought it was for [his] protection." Second Am. Compl., Kosiba Aff. ¶ 11. In addition, by his own admission, his lack of compliance with the safety measures were not due to a medical condition but rather because he started to believe that the measures being mandated were "political" "not science." *Id.*

Finally, Kosiba asserts in the Second Amended Complaint that he did not need or want any reasonable accommodations. *See* Second. Am. Compl. ¶ 58.

Read as a whole, Kosiba's discrimination allegations do little more than take issue with the safety protocols that were being enforced during the pandemic for unvaccinated healthcare workers – protocols which were clearly applied to all employees who were not otherwise granted a medical or religious accommodation.  He repeatedly argues that "the so-called "vaccines that [were] promoted as vaccines [did] not actually prevent transmission or infection of any contagious disease, specifically regarding the so-called 'COVID-19' . . . disease[]." Second Am. Compl. ¶ 59.  In fact, he repeatedly questions the effectiveness of wearing masks and even doubts the existence of Covid-19.  For these reasons, the undersigned respectfully recommends that Kosiba's ADA discrimination claim be dismissed.[3]

### 2.    Count II – Retaliation

Kosiba's second count alleges that CHSLI retaliated against him under the ADA by continuing to enforce its Covid-19 policies after he objected to them. *See* Second Am. Compl. ¶¶ 47-49.  Specifically, Kosiba asserts that by August 2021, despite his "reasonable[,] good faith belief  that he was exercising protected opposition to discrimination and claiming rights protected under the ADA," CHSLI threatened to terminate him because of his unvaccinated status.  *Id.* ¶¶ 73-4.  "To state a claim for ADA retaliation, 'a plaintiff must allege that: '(1)[ ]he engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took an adverse employment action against [him]; and (4) a causal connection exists between the alleged adverse action and the protected activity.'" *Robles v. Medisys Health*

---

[3] Given the Court's conclusion concerning Kosiba's alleged perceived disability, the undersigned need not address the defendant's arguments regarding Kosiba's claim that he was not provided a reasonable accommodation and was subjected to improper medical examinations in violation of the ADA.

*Network, Inc.,* No. 19 CV 6651 ARR RML, 2020 WL 3403191, at *19 (E.D.N.Y. June 19, 2020).  Moreover, to plead the fourth element, that being, causation, a plaintiff must allege "that his protected activity was the but-for cause of the adverse employment action." *Ninying v. N.Y.C. Fire Dep't,* 807 F. App'x 112, 115 (2d Cir. 2020).

   CHSLI has moved to dismiss this claim arguing that Kosiba has failed to allege that a causal connection exists between the adverse action and the protected activity.  Def. Mem. at 12-3.  The undersigned agrees.  A majority of the "adverse actions" to which Kosiba takes issue, "like PPE wearing, daily temperature checks, mask wearing and PCR tests," were instituted before Kosiba objected to the safety protocols.  *See* Second Am. Compl., Kosiba Aff. ¶ 11; *see also Chung v. City Univ. of New York,* 2014 WL 1146811, at *4 (S.D.N.Y. Aug. 27, 2014)("Plaintiff's alleged protected activity cannot be the but-for cause of actions that were already allegedly being taken against Plaintiff before he engaged in the protected activity."), *aff'd,* 605 F. App'x 20 (2d Cir. 2015).  Furthermore, to the extent Kosiba relies on his ultimate termination as an adverse employment action, there is no question that CHSLI's decision to terminate him was completely unrelated to the complaints that he made to human resources or filed with the EEOC.  Kosiba was terminated pursuant to a policy mandated by the DOH for healthcare workers – a policy with which Kosiba refused to comply.  *See* Second Am. Compl. Attachments.  Accordingly, the undersigned also respectfully recommends that Kosiba's retaliation claim be dismissed.

   **C.   Kosiba's Motion to Amend**

   As indicated above, Kosiba has crossed moved for leave to file a Third Amended Complaint.  The undersigned respectfully recommends that the request be denied.  "[W]hen a cross-motion for leave to file an amended complaint is made in response to a motion to dismiss

under Fed. R. Civ. P. 12(b)(6), leave to amend will be denied as futile only if the proposed new claim cannot withstand a 12(b)(6) motion to dismiss for failure to state a claim, *i.e.,* if it appears beyond doubt that the plaintiff can plead no set of facts that would entitle him to relief." *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001). Such is the case here. Kosiba's proposed amended pleading is substantively identical to his Second Amended Complaint. He has not added any facts that would enable his claims to withstand another motion to dismiss. Moreover, granting Kosiba's motion to amend, which was, once again, filed in response to CHSLI's motion to dismiss would result in undue delay and prejudice to CHSLI. CHSLI was already forced to halt its briefing mid-stream in May 2022. Given the history of this case and allegations in the proposed complaint, the undersigned does not believe Kosiba should be granted a fourth bite at the apple.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically served by the Court on the defendant. A copy will be served on the plaintiff by certified mail, return receipt requested. Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a courtesy copy to the undersigned within 14 days. Failure to file objections within this period waives the right to appeal the District Court's Order. See 28 U.S.C. § 636(b)(1); Fed R. Civ. P 72; *Mejia v. Roma Cleaning, Inc.*, No. 17-3446, 2018 U.S. App. LEXIS 28235, 2018 WL 4847199, at *1 (2d Cir. Oct. 5, 2018) ("Plaintiff has waived any objections to the Magistrate's finding" by failing to timely object); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.,* 596 F.3d 84, 92 (2d Cir. 2010); *Beverly v.*

*Walker,* 118 F.3d 900, 902 (2d Cir. 1997).


Dated: Central Islip, New York
November 18, 2022

                                                    _____/s/_____
                                                    ARLENE R. LINDSAY
                                                    United States Magistrate Judge